742 P.2d 792

**STATE of Arizona, Appellee,**

v.

**Jesse Leroy POWERS, Appellant.**

**No. CR–86–0141–AP.**

Supreme Court of Arizona.

Sept. 3, 1987.

Robert K. Corbin, Atty. Gen. by William J. Schafer III, Galen H. Wilkes, Ronald L. Crismon, Asst. Attys. Gen., Phoenix, for appellee.

Ross P. Lee (former), Dean W. Trebesch (current), Maricopa County Public Defender by James H. Kemper, Carol Carrigan, Deputy Public Defenders, Phoneix, for appellant.

FELDMAN, Vice Chief Justice.

After a jury convicted Jesse Leroy Powers, aka Gary Lee Blanchat, of armed robbery, attempted armed robbery, kidnapping, and aggravated assault, the trial

court enhanced his sentences pursuant to A.R.S. § 13–604.02(A) (Supp.1986) because it found that Powers was on "escape from confinement" when he committed the charged crimes. Among several other assignments of error, Powers claims that his sentence violates the federal and state constitutions because a jury, not a judge, should have made the determination of escape status, and the determination should have been made beyond a reasonable doubt. He also claims that even using a preponderance standard, the evidence was insufficient to find that he was an escapee.

Because Powers was sentenced to life imprisonment, we have jurisdiction over his direct appeal pursuant to Ariz. Const. art. 6, § 5(3) and A.R.S. §§ 13–4031, –4033.

## FACTS

On October 17, 1985, Powers robbed an auto parts shop and a grocery store. He was taken into custody after a shootout with police. A jury convicted Powers of three counts armed robbery, two counts attempted armed robbery, one count kidnapping, and two counts aggravated assault. *See* A.R.S. §§ 13–1904, –1001, –1304, –1204. The jury determined that these were all dangerous nature felonies because Powers had exhibited a weapon. A.R.S. § 13–604(K) (Supp.1986).

The sentencing court convened to determine whether Powers was an escapee from confinement when he committed these crimes, in which case the enhancement provisions of § 13–604.02(A) (Supp.1986) would apply. Powers objected to this procedure on the ground that a jury, not the court, should determine escape status. Overruling this objection, the court heard testimony from Gordon Hetzel, facility administrator of the Winfield Prerelease Center in Winfield, Kansas. Hetzel testified that Powers had been convicted and sentenced in Kansas for aggravated escape from custody, aggravated robbery, burglary, and possession of marijuana with intent to sell,

all felonies. Hetzel said that Powers had been transferred from the Kansas state penitentiary to the Winfield Prerelease Center on August 20, 1984. Powers's parole eligibility date with all possible good time was November of 1984. While still under the jurisdiction of the Kansas department of corrections, according to Hetzel, Powers was furloughed for a weekend to a relative and failed to follow instructions to return on October 22, 1984. Therefore, on October 17, 1985, the date of the Arizona crimes, Hetzel considered Powers an escapee pursuant to Kansas law. Hetzel said escape charges are pending in Kansas, but he did not know the elements of the crime of escape in Kansas.

By a preponderance of the evidence, the court found that Powers was an escapee when he committed the crimes for which he was being sentenced. Accordingly, the court sentenced Powers to life imprisonment without possibility of parole for twenty-five years on each count, all sentences to be served concurrently.

Powers claims constitutional error on the ground that a jury, and not the judge, should have made the determination of escape status. Powers also contends that the due process clause requires the determination to be made by proof beyond a reasonable doubt. In addition, Powers says that the evidence of escape status was insufficient to satisfy even the lesser preponderance standard. He also claims that the trial court erred in imposing a felony assessment pursuant to A.R.S. § 13–808 (now § 13–812) after sentencing had been completed.[1]

## I. THE RIGHT OF JURY TRIAL AND A.R.S. § 13–604.02(A)

### A. *State v. Hurley*

Arizona trial courts must impose a life sentence without possibility of release for twenty-five years on any person who is within one of the five classifications enumerated in A.R.S. § 13–604.02(A) and who

---

1. The state concedes that the sentencing minute entry is incorrect and should reflect only one prior conviction on counts 3 through 8. There-fore, pursuant to A.R.S. § 13–4036, we direct that the sentence be modified to reflect this correction.

commits a dangerous nature felony. The five classifications are persons on probation, parole, work furlough, or release or escape from confinement.[2] In this case, Powers's sentences have been significantly enhanced as a result of the finding that he was an escapee when he committed the offenses.[3]

We recently considered whether the release status finding of § 13–604.02(A) is an element of a separate offense or crime to be determined beyond a reasonable doubt by a jury, or is merely a sentencing factor that may be determined by the trial court without a jury. *State v. Hurley*, 154 Ariz. 124, 741 P.2d 257, No. 6674 (Ariz. July 2, 1987); *see also McMillan v. Pennsylvania*, 477 U.S. 79, 106 S.Ct. 2411, 91 L.Ed.2d 67 (1986). We concluded that although release status determination involves a factual finding, the status is not an element of the crime, but only a sentence enhancer. Therefore, we held that release status need not be found by a jury nor found beyond a reasonable doubt. We reached this conclusion for several reasons. First, release status has never been a crime or an element of any crime; the elements necessary to constitute the charged crime already have been found by a jury beyond a reasonable doubt. Instead, release status has been a traditional sentencing consideration to be evaluated by the court. *Hurley*, 154 Ariz. at 130, 741 P.2d at 263. Second, to find release status, the court need not evaluate conduct or mens rea involved in the prohibited transaction. *Id.* Third, release status is a determination that is applied across the board to enhance the sentences of those

convicted of almost any crime defined in the criminal code. *Id.* at 130, 741 P.2d at 263. We believe, however, that when applied to the escape status determination, the *Hurley* analysis leads to a different result.

### B. *Application*

In concluding that the release status finding was not an element requiring jury trial, we emphasized in *Hurley* that being on release is not a crime in itself and involves no component of criminal activity. At 131–32, 741 P.2d at 264–65. A defendant on release already has been convicted by a jury beyond a reasonable doubt of the underlying criminal conduct that led to his status of being on release. Thus, a jury already has made the critical finding: that the conduct and the accompanying mens rea leading to the creation of the status violated criminal laws. At sentencing for a later crime, the court thus is merely required to find that, at the time the later offense was committed, the defendant still was subject to the jurisdiction of the department of corrections. *Id.* at 132, 741 P.2d 265.

This reasoning does not hold for escape status. Escape, a traditional common law crime, remains a felony under the penal codes in both Arizona and Kansas. *See* A.R.S. § 13–2503(A) (Supp.1986); Kan.Stat. Ann. § 21–3810 (1981). In both states, the prosecutor must prove to a jury beyond a reasonable doubt that a defendant acted with an accompanying mental state. *See* A.R.S. §§ 13–2503(A), –105(6)(b) (Supp.

---

**2.** A.R.S. § 13–604.02(A) reads as follows:
[A] person convicted of any felony offense involving the use or exhibition of a deadly weapon or dangerous instrument or involving the intentional or knowing infliction of serious physical injury upon another if committed while the person is on probation for a conviction of a felony offense or parole, work furlough or any other release or escape from confinement for conviction of a felony offense shall be sentenced to life imprisonment and is not eligible for suspension or commutation of sentence, probation, pardon, parole, work furlough or release from confinement on any other basis....

**3.** A first-time felon convicted of armed robbery can be sentenced to from 5.25 to twenty-one

years with parole eligibility from half to two-thirds time, depending on a number of factors. *See* A.R.S. §§ 13–1904, –701, –604(G). From our reading of the statutes, the most severe sentence Powers could have received for the dangerous nature armed robbery with three prior felony convictions would have been twenty-eight years, with parole eligibility after two-thirds time. *See* A.R.S. § 13–604(D). Of course, the trial court could have imposed all of Powers's sentences consecutively. *See* A.R.S. § 13–708 (now amended to require consecutive sentences). The court also had the option of imposing all of the sentences under A.R.S. § 13–604.02(A) consecutively.

1986) ("knowingly" requirement); Kan. Stat.Ann. §§ 21–3810, –3201 (1981) ("purposefully and intentionally" requirement).

Thus, unlike the release status considered in *Hurley*, escape is a crime in itself. The crime of escape contains its own elements: the state must prove beyond a reasonable doubt that the defendant possessed the requisite intent to escape. In this case, Powers is receiving additional punishment based on alleged criminal conduct—escape—for which no jury has found him guilty.

Second, unlike both *McMillan* and *Hurley*, the enhancement triggered by escape status effectively may usurp the punishment for the crime of escape itself. If Powers had been tried and convicted of escape by a jury, he could have received only a maximum four- or five-year prison term. *See* A.R.S. § 13–2503(B), –701, –702; Kan.Stat.Ann. § 21–3810 (1981), –4501(e) (Supp.1986) (five years). In the present scenario, if the state has any doubt whether Powers is guilty of escape, it could simply rely on the enhancement provisions and ignore the escape charge. If Kansas never tries Powers on the escape charge, Arizona could still incarcerate him for many years, potentially for life, based on the finding that he was an escapee.

■ To summarize, ordinarily the jury trial and due process rights invoked by Powers apply only to the elements of the crime charged, as those elements have been defined by the legislature. *See* *McMillan*, 477 U.S. at ——, 106 S.Ct. at 2416. Those guarantees do not apply to factual findings that are used only to enhance punishment after a jury already has found a defendant guilty of a crime beyond a reasonable doubt. *Id.; Hurley, supra.* However, the legislature's ability to denominate factual findings as sentencing factors, rather than *elements* of the crime, must be restricted by the jury trial and due process guarantees or they would be meaningless. *Hurley*, 154 Ariz. at 129–30, 741 P.2d at 262– 63; *McMillan*, 477 U.S. at ——, 106 S.Ct. at 2417.

■ For the reasons stated, we conclude that although release status determination may be made by a court by a lesser standard of proof without violating constitutional guarantees (*Hurley, supra*), escape status is different. Obviously, the legislature is free to denominate the status of escape as a sentencing factor. By so doing, however, the legislature made the commission of an antecedent crime—escape—a predicate for applying the enhancement factor. In such a case, we believe that guilt of the predicate crime must be proved beyond a reasonable doubt to a jury before the status resulting from the prior offense may be used to enhance punishment for a subsequent offense.

We are aware that in adopting § 13–604.-02(A), the legislature did not intend to punish an offender for escaping, but intended to punish recidivists for committing new, dangerous nature felonies while still under the jurisdiction of a correctional agency. We are also quite cognizant of the anomaly resulting from holding that the status of "escape," but not the status of "release," requires trial by jury. Nevertheless, the legislature chose to word the statute by specifying "escape" as a trigger for enhancement, thus effectively crossing the line between proof of mere status and proof of all elements of a recognized crime.

Accordingly, we hold that under article 2, sections 4, 23, and 24 of the Arizona Constitution and the sixth and fourteenth amendments of the United States Constitution, Powers had a right to trial by jury under the reasonable doubt standard on the question of whether he had escaped.[4] *Hurley, supra; McMillan, supra.* The decision

---

**4.** At trial, defendant claimed that his sentence could not be enhanced by the Arizona trial judge unless he was given a jury trial on the issue of his escape in Kansas. Of course, defendant cannot be tried in Arizona for a crime committed in Kansas. The issue of whether his sentence can be enhanced in Arizona on the basis of a finding by an Arizona jury that defendant did escape in Kansas, even though he has not been convicted in Kansas, has not been raised. We do not reach that issue. Of course, if defendant had been convicted of escape in Kansas, his sentence in Arizona could be enhanced under the principles of *Hurley* without a jury trial.

with respect to the Arizona Constitution is made on independent state grounds, with federal authority cited only for illustrative purposes. *See Michigan v. Long*, 463 U.S. 1032, 1037–44, 103 S.Ct. 3469, 3474–78, 77 L.Ed.2d 1201 (1983). A jury must find or have found Powers guilty of escape beyond a reasonable doubt before his status as an escapee may be used to enhance the sentences for his later crimes pursuant to § 13–604.02(A). Our disposition of this issue moots the question of whether the state proved Powers's status as an escapee by a preponderance of the evidence. On this point, however, see *Hurley*, 154 Ariz. at 132–33, 741 P.2d at 265–66.

## II. FELONY ASSESSMENT

■ A.R.S. § 13–808 (now § 13–812) provides that "each person convicted of a felony shall be assessed a penalty of ... one hundred dollars." This money goes into a victim compensation fund. *Id.* In this case, the trial court did not impose the assessment during the actual sentencing hearing. Instead, the court added the assessment to the sentence by appending a page to the sentencing minute entry. The defendant contends that increasing his sentence after sentencing had ended violated his right against double jeopardy. We disagree.

■ Under the federal constitution, the prohibition against double jeopardy is inapplicable to sentencing decisions other than death sentences. *See United States v. DiFrancesco*, 449 U.S. 117, 134–35, 101 S.Ct. 426, 436, 66 L.Ed.2d 328 (1980) (a sentence "does not have the qualities of constitutional finality that attend an acquittal"); *cf. State v. Rumsey*, 136 Ariz. 166, 665 P.2d 48 (1983), *aff'd*, 467 U.S. 203, 104 S.Ct. 2305, 81 L.Ed.2d 164 (1984) (double jeopardy prohibition extended to capital sentencing hearings that bear the hallmarks of a trial on guilt or innocence). Moreover, even if sentencing decisions do implicate double jeopardy concerns, a trial court constitutionally may increase a sentence that it has imposed in contravention of its statutory authority. *See Bozza v. United States*, 330 U.S. 160, 67 S.Ct. 645,

91 L.Ed. 818 (1947), *cited with approval in DiFrancesco*, 449 U.S. at 135, 101 S.Ct. at 436; *State v. Suniga*, 145 Ariz. 389, 393, 701 P.2d 1197, 1201 (App.1985) (trial court can increase an unlawful sentence or one imposed unlawfully); *see also State v. Avila*, 147 Ariz. 330, 710 P.2d 440 (1985).

In this case, the trial court apparently overlooked its statutory duty to impose a felony assessment. Because the court was required to impose the assessment, its initial sentence was unlawful under the statute and it could correct the sentence to reflect the felony assessment without violating the prohibition against double jeopardy. However, the proper method of correcting an illegal sentence is not by minute entry. Correction of the sentence should have been in open court with the defendant present. Rule 26.9, Ariz.R.Crim.P., 17 A.R.S.

## CONCLUSION

The judgment of conviction is affirmed. The sentence imposed is vacated. This case is remanded for resentencing on all charges consistent with the dictates of this opinion. We have searched the record for fundamental error. A.R.S. § 13–4035. Finding none, we affirm the remainder of the proceedings.

GORDON, C.J., and CAMERON and HOLOHAN, JJ., concur.

MOELLER, J., did not participate in the determination of this matter.